IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| PATRICIA BAXTER IRWIN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| MARTIN O'MALLEY, | * | No. 4:23-cv-01139-JJV |
| Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

Plaintiff, Patricia Baxter Irwin, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits and widow's insurance benefits. Both parties have submitted briefs and the case is ready for a decision.

A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). After careful review of the pleadings and evidence in this case,

I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff was fifty-one years old at the time of the administrative hearing. (Tr. 43.) She testified she obtained her GED while in high school, (*Id.*), and she has past relevant work as an office clerk. (Tr. 29.)

The ALJ[1] found Ms. Irwin met the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 18.) She also is the unmarried widow of the deceased insured worker and has attained the age of 50. So, Ms. Irwin met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act for the prescribed period ending March 31, 2026. (Tr. 19.)

The ALJ found Ms. Irwin has "severe" impairments in the form of "COPD, diabetes mellitus with peripheral neuropathy, migraine headaches and mood disorder." (*Id.*) The ALJ further found she did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 20-21.)

The ALJ determined Ms. Irwin had the residual functional capacity to perform a reduced range of light work given her physical and mental limitations. (Tr. 21.) Based on this residual functional capacity (RFC) assessment, the ALJ determined Plaintiff could perform her past

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 420 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

relevant work of office clerk (sedentary). (Tr. 29.) Alternatively, the ALJ utilized the services of a vocational expert, (Tr. 58-66), to determine if other jobs existed that Plaintiff could perform despite her impairments. Based in part on the vocational expert's testimony, the ALJ determined Plaintiff could also perform the jobs of office helper, small assembler, and hand packager. (Tr. 30.) Accordingly, the ALJ determined Ms. Irwin was not disabled. (Tr. 30.)

The Appeals Council received additional evidence and denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 2.)

In support of her Complaint, Plaintiff argues, *inter alia*, that the ALJ erred in not finding she met the requirements of Listing 3.02 and failed to address the medical necessity of supplemental oxygen in the RFC assessment. (Doc. No. 10 at 8-15.) Regarding the Listing, Plaintiff says:

> On March 14, 2022, Plaintiff's pulmonologist, Dr. Abraham, noted that Plaintiff qualified for oxygen due to the findings from pulmonary stress testing. (Tr. 817). At that time, Dr. Abraham performed a six-minute walk test. Id. She noted that Plaintiff's pulse oximetry at rest on room air was 91%. Id. While exercising/ambulating Plaintiff's pulse oximetry on room air decreased to 87%. Id. With the administration of 2 LPM of oxygen, Plaintiff's ambulating pulse oximetry increased to 94%. Id. The testing was performed at Central Arkansas Lung which is located in Conway, Arkansas. (Tr. 818). The altitude of Conway, Arkansas is 328 feet above sea level [footnote excluded]. Therefore, Plaintiff's pulse oximetry of 87% would meet the requirements of listing 3.02(C)(3). The requirements of the listing are very straightforward and clearly included in the evidence of record. Therefore, the ALJ's finding that Plaintiff's impairment did not meet listing 3.02, without any further explanation, is not supported by substantial evidence.

(*Id.* at 9.)

But the Commissioner counters:

> It is true that testing on that one occasion showed that her oxygen saturation dipped to 87% (Tr. 817), which on its face was sufficient to meet listing 3.02C(3)'s criteria of an $S_pO_2$ less than or equal to 87% when testing was performed at less than 3,000

> feet above sea level. . . . However, the listing's requirements are not as "very straightforward" as Plaintiff would have the Court believe. . . [as] listing 3.00H defines pulse oximetry ($S_pO_2$) requirements for an acceptable test and report. It states that "[y]ou must be medically stable at the time of the test. See 3.00E2a." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00H(2)(a). Listing 3.00E2a states that, to be "medically stable" at the time of testing, you must not be "[w]ithin 2 weeks of a change in your prescribed respiratory medication"; "[e]xperiencing, or within 30 days of completion of treatment for, a lower respiratory tract infection"; or "[e]xperiencing, or within 30 days of completion of treatment for, an acute exacerbation (temporary worsening) of a chronic respiratory disorder." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E2a(i)-(iii). The single test on which Plaintiff relies was performed at a March 2022 visit with pulmonologist Ladly Abraham, M.D., at Central Arkansas Lung (Tr. 815). In the treatment note's introduction, Dr. Abraham noted that Plaintiff "was treated on zpak [Azithromyacin/Zithromax] and steroids this week for exacerbation. She has not improvement [sic] so far" (Tr. 815). That Dr. Abraham indicated that Plaintiff was in the midst of an "exacerbation" of her respiratory problems at the time of the March 2022 testing means that Plaintiff cannot rely on this test to show that she met listing 3.02C. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E2a (you must not be "[e]xperiencing, or within 30 days of completion of treatment for, an acute exacerbation (temporary worsening) of a chronic respiratory disorder." (emphasis added)). Indeed, Dr. Abraham's notes from other visits show that Plaintiff's oxygen saturation levels were much higher—97% in January 2022 and January 2023 (Tr. 781, 1020) and 95% in June and September 2022 (Tr. 939, 943). Because Plaintiff relies on a single oxygen saturation test performed when she was in the midst of an acute exacerbation of her respiratory condition and on medication to treat that exacerbation, her argument that she met listing 3.02C must fail.

(Doc. No. 12 at 5-6.)

After careful consideration, I find the Commissioner's argument persuasive. A claimant has the burden of proving her condition meets or equals an impairment listed in Appendix 1. 20 C.F.R. § 404.1525(d) (1997); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *see Marciniak v. Shalala*, 49 F.3d 1350 (8th Cir. 1995). The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). For a claimant to show that her impairment matches a listing, that impairment must meet all the specified medical criteria. *Marciniak*, 49 F.3d at 1353. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.*

Here, as the Commissioner points out, Plaintiff fails to fully satisfy the requirements of the Listing.  And while the ALJ barely explained his reasons for finding Ms. Irwin failed to meet the requirements of Listings 3.02, 9.0, 11.2 and 11.14, (Tr. 20), he did fairly address the March 14, 2022, pulmonologist report saying:

> At a pulmonology follow-up exam on March 14, 2022, a pulmonary function test showed FEV1/FVC ratio of 0.68, FEV1 of 74%, FVC of 86%, TLC of 97% and DLCOc of 61%. Overall, the test revealed mild obstruction and mild diffusion abnormality. A chest x-ray showed no acute cardiopulmonary issues. She was assessed with COPD, nicotine dependence and obstructive sleep apnea. [Tr. 854-859].

(Tr. 23.)

Additionally, Ladly Abraham, M.D., noted, "Patient uses and benefits from 2L 02 NC at night and PRN during the day. Recommend she check her SpO2 to maintain it above 90%. She doesnt [*sic*] necessarily need 02 just [because] she is short of breath. Discussed this at length with patient."  (Tr. 940.)  And the examinations by Plaintiff's doctors routinely showed nothing disabling.  (439-40, 503, 540-541, 566-67, 572-73, 576-77, 806-07, 816, 924-25, 966-67.)

Plaintiff contends the ALJ should have developed the record about her claim for the need for oxygen during the workday.  (Doc. No. 10 at 12.)  "While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted).  Although Plaintiff makes a reasonable point here, it is the Plaintiff's responsibility to provide specific medical evidence to support her claim. 20 C.F.R. § 416.912; *see Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff bears a heavy burden in showing the record has been inadequately developed. She must show both a failure to develop necessary evidence and unfairness or prejudice from that failure. *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007). Plaintiff has shown neither.

The ALJ is permitted to issue a decision without obtaining additional evidence if the record is sufficient to make an informed decision. *E.g., Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). In this case, the record contains adequate medical records to support the ALJ's decision that Plaintiff can perform light work activities.

It is impossible to address Plaintiff's disability claim without addressing her significant habit of smoking cigarettes. Plaintiff is a prolific smoker - starting at age 13. Yet she seeks disability for issues that clearly are related and exacerbated by her terrible habit of smoking. The record is replete with evidence that her doctors consistently counseled her to quit – to no avail. (See *e.g.,* Doc. No. 430-31, 941.) Additionally, she has routinely been counseled to exercise and engage in lifestyle changes. (Tr. 540-41, 782-83, 817, 841.) She has not been at all compliant with her doctors' advice, and failure to follow a prescribed course of remedial treatment without good cause is grounds for denying an application for benefits. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).

I recognize Ms. Irwin clearly has some limitation in her ability to perform work-related activities. However, after close scrutiny of the ALJ's decision and the medical evidence in this case, I conclude that the ALJ's decision meets the "substantial evidence" test.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A).  The overall record here fails to support Plaintiff's allegation of complete disability.

Plaintiff has advanced other arguments – including her argument about the RFC conflicting with her social limitations - that I find are without merit.  I agree with the Commissioner's arguments on this point.

Ms. Irwin's counsel has done a very admirable job advocating for her rights in this case.  But is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts her findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed with prejudice.

DATED this 14th day of March 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE